Nathan Railey
Inmate #11897-003
U.S. Penitentiary Coleman 2
P.O. Box 1034
Coleman, Fl. 33521

The United States District Court for
The Middle District of Florida

Nathan Railey, Inmate #11897-003          Case No: 8:19 cv 2025 / 33 AEP
              (Plaintiff)

Vs.                                        Motion for Temporary Restraining Order

Warden of Coleman 2 U.S. Penitentiary     and/or Preliminary Injunctive Relief
              (Defendant)

Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief

①      Comes Now, Nathan Railey, Inmate #11897-003, on this day, Aug. 12th, 2019,
acting in Propria Personam / Pro Se, files this stand-alone Motion for Temporary Re-
straining Order (TRO) and/or Preliminary Injunctive Relief due to an unprecedented
disregard by the Health Department of Coleman 2 USP upon my significant medical
concerns reaching a level satisfactory to meet the standards of cruel and unusual
punishment/deliberate indifference dictated by the 8th Amendment of the United
States Constitution, and at the very least, gross negligence and/or medical mal-
practice dictated under FTCA Tort law.

②      I have not exhausted the administrative remedy process and currently await
the response of the last step of the process from the central office of the Federal
Bureau of Prisons (BOP); however, as are the extraordinary circumstances that underly
the need for a TRO/Preliminary Injunction, this particular occasion and issue has
risen to the level of need to require  immediate addressment, necessitating
the Preliminary Injunction's filing prematurely to the action it will soon be attached
to. This is the reason I have provided this request for Injunctive relief as a stand-
alone motion. Injunctive relief will be necessitated "to preserve the status quo between the
parties and to prevent irreparable injury until the merits of the lawsuit itself can
be reviewed," and this is precisely why I have provided this stand alone and because
of urgency. Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); All Care Nursing Service

V. Bethesda Memorial Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989); United States V. State of Alabama, 791 F.2d 1450, 1457 n.9 (11th Cir. 1986)

## I. Jurisdiction

③     First and foremost, the relief requested herein is injunctive and jurisdiction of a federal court to provide such relief is an empowerment supplied by the **Federal Declaratory Judgment Act, 28 USC § 2201 (1982)**. I hereby state that there is a "case or controversy" or an "actual controversy" as required under **Article III** of the **U.S. Constitution** for which I have a legal interest therein and require declaratory and injunctive relief thereon.

④     I had to submit this stand-alone due to urgency of the situation but it will be eventually attached to a **FTCA** Tort Claim; whereby, under the **FTCA**, the United States can thus be held liable for negligent or wrongful acts or omissions of government employees only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission ocurred." **28 USC § 1346 (b)(1)** Furthermore, pursuant **FTCA**, the United States can be held liable in tort in the same manner and only to the same extent as a private individual under like circumstances. **28 USC § 2674**

⑤     And lastly, and only pertinent upon this TRO/Preliminary Injunction, I invoke the "Right of Review" as delineated under **5 USC § 702** since upon this injunction I seek no remuneration whatsoever and only seek to be given the proper medical attention. The form and venue and action reviewable are delineated under **5 USC § 703, et seq.** and all apply since the actionable offense in question hereon took place here at Coleman 2 USP, located in the Middle District of Florida.

⑥     By all the aforementioned statutes and authorities do I claim that the Mid-

dle District of Florida holds and retains jurisdiction upon this filing's action and requests of injunctive relief delineated herein.

## II. Introduction

⑦      This Motion for TRO/Preliminary Injunctive Relief came about from a continuing complete disregard for the medical treatment I require of the BOP and the Health Dept. of Coleman 2 USP over some severe medical conditions I have been dealing with that is crippling me under intense severe **pain** and the embarassing loss of critical bodily functions. The whole thing is disgustingly repugnant to anyone's logical sensibilities and is interfering in my life in unnumerable ways and must be addressed immediately.

⑧      Firstly, attached hereto is my declaration complete with accompanying evidentiary exhibits that provide an in-depth timeline over the events as they transpired and I will be referring to it often in proffering my discussions unto this court for review hereon. (see attached **Declaration of Nathan Bailey**, hereon afterwards referred to as "**Dec. N.B.**") However, as a very brief overview, I will provide the bare essentials that underlies the reasons for this action.

⑨      Before being transferred to Coleman 2, I was at Lewisburg USP, in Lewisburg, Pa, specifically in the Special Management Unit (SMU) which is a special program basically for trouble-makers. I got sent there for an infraction that was unconstitutionally given to me and I proved such in a subsequent suit but during my time in the SMU, I began having severe medical complications. What first began as headaches, eye pain, and blurry vision in my left eye in the evenings became complete vision loss of the left eye by optic neuritis and severe migraines and facial trigemnal nerve pain.

⑩      Multiple ophthlamology visits to outside consultants determined the vision-loss

as permanent and it took place in under three months, displaying a progressive state of symptoms. The opthlamologists could see the "thinning" of the optic nerve which looked like end-stage glaucoma but without the usual high eye-pressure that causes such, dictating the implication of optic neuritis. This means the issue was caused by a neurological condition, all of which are serious illnesses, most of which are terminal and auto-immune deficiency disorders. Because of this fact, the opthlamologists referred me to a neurologist that specialized in opthlamological-related disorders and I did indeed see this type of specialist in a consultation. I'd have those documents for the court's review except I am being refused these as well; another issue to be handled herein.

⑪        I had recieved MRI's of my brain and occipital orbits and lesions weren't found that are synonomus to MS (Multiple Schlerosis) but neither does it rule it out neither; however, at the neurologist/opthlamologist visit it was asserted that it could be NMO (Neuro-Myelitis Optica) a similar auto-immune disorder. Regardless of which disorder is at play, all disorders like such and that are the only possible diagnoses, are all terminal illnesses, extremely painful, require serious medical care, and must be aggressively medically provisioned. Within all these disorders is the neurological system being attacked by the body's immune system and eventually the patient loses body functions, like bladder/bowel control and eventually movement. They all are horrible and must be taken seriously.

⑫        Even before arriving at Coleman 2, my symptoms had steadily progressed and I was being denied increases in pain medicine to compensate nor being provided medicine to halt the progression of such neither. At the Oklahoma City Transfer Center they immediately increased my medication due to the increasing symptomology, but once I got here at Coleman 2, the medical considerations ceased again. Even worse, the Health Department here at Coleman 2 just doesn't seem to care and a specific nurse and I had on-going verbal altercations and,

I must be clear hereon, these verbal altercations were not due to myself or anything I did to instigate such, but rather, the rudeness, hatefulness, and plain old unprofessionalism of the nurse in question: Nurse Pearsall.

⑬      Immediately I began to email medical, along with submitting cop-outs and sick calls due to severe pain complications in my hips, legs, face, and sometimes in between my shoulder blades but also inclusive are severe headaches or migraines that I believe stem from the nerve issues in my left eye. The point is, my condition was/is worsening rapidly and I need medical assistance in many areas.

⑭      While trying to be seen to address these issues, I began to lose bladder control at night from what I believe is a combination of severe pain obscuring the bladder nerve sensation and of possible nerve damage from this disease I'm fighting. This is a very embarassing and troubling situation that needs immediate medical attention and not only can I not recieve such but, the problematic Nurse, Mr. Pearsall, who works the pill window, purposely sent a message to one of the doctors that he "suspected" me of diverting my medication and the doctor unceremoniously, and abruptly, discontinued my pain medication only, causing me to have painful flu-like withdrawal-like symptoms, not to mention now having uncontrolled and unmanaged severe chronic pain. The whole thing is unbelievable and regardless of multitudinous emails, cop-outs, and sick calls, the medical department will not see me. I've had to resort to rudimentary resolutions of stuffing a sock with toilet paper and tying to my nether-region to at-least keep from urinating on my bed clothes and bed linens. The pain is crippling ... maddening.

⑮      I wish I were exaggerating this issue but I am not. Please review my attached Declaration and the attached exhibits all of which provide evidentiary substantiation to all I've asserted herein and I apologize for my declaration's length but it was imperative because it is

inevitable that I'll be filing a FTCA lawsuit for having to endure all these transgressions. I normally would've submitted this motion with a complaint/cause-of-action but this matter is critically urgent for injunctive relief and I have not fully exhausted my administrative remedies yet to file suit; however, once I recieve injunctive relief, I will ask to stay the proceedings (and injunctive relief) until all remedies have been exhausted and the action can rightfully continue. That is the plan anyhow.

⑯        Therefore, the relief I require is due to the removal of critical medications and a complete disregard of my medical condition which is very serious. I have lost my vision in one eye and am riddled in pain and now urinary control is waning. I must be given the proper pain medication and strong enough pain medication to help with the bladder control issues as well as whatever medication that exists to halt or stymie the progression of this disease. I ask the court for injunctive relief as immediate as possible to create the necessary "status quo" until I can proceed with the action that is impending. Below is my discussion thereupon...


### III. Discussion: Injunctive Relief
### a. TRO's and Preliminary Injunctions

⑰        There are particular statutes that establish the basis of care apportioned to inmates being held by the BOP. Statute 18 USC §4042, titled "Duties of Bureau of Prisons", under §4042(a)(2) says "the BOP... shall provide suitable quarters and provide for the safe-keeping, care, and subsistence of all persons charged with or convicted of offenses against the United States...," and directly following that, under §4042 (a)(3), does it state that the BOP also "provide for the protection" of those same incarcerated individuals. This only states that care is to be provided.

⑱         Statute 18 USC § 3621, titled "Imprisonment of a convicted Person," specifically under §3621(b), it states that the Bureau must "meet[] minimum standards of health and habitability," creating a standard that must be applied Bureau-wide for each and every inmate. The statutes just mentioned provide that care must be provided and that there are minimum standards by which that health care must meet to be in accordance with the law, much less the constitution. When considering a TRO/Preliminary Injunction, as in this case, I carry a "burden of persuasion" that should arise under an "extraordinary or drastic" cause that underlied such. McDonald's Corp v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)

⑲         In order to establish the extraordinary remedy that is needed herein, I have to display how the actions being held against me are unbelievably unconstitutional to the point to require such a drastic measure. Upon that there are two unconstitutional behaviors that are grotesque and one unlawful behavior that just supports these contentions, and they are: ① You have an 8th Amendment violation to be discussed that reaches both the cruel and unusual punishment factor and the deliberate indifference factor. Both will be discussed herein. ② There's an 5th Amendment violation over due process since I'm suffering from an act of punishment which was deliberate and without any process whatsoever. It is the punishment that creates the 8th Amendment violation because the punishment is the removal of critical medication (plus more of course). And lastly ③ the unlawful activity is the use of lies within my medical files which are government documents and if the medical staff are contracted, then this raises legal/criminal questions.

⑳         The unlawful behaviors will be discussed in relation to the constitutional questions and each constitutional violation will be discussed, ending with the apparent extraordinary scenario that requires extraordinary relief. I honestly do not believe it will be difficult to meet the injunctive relief requisites even though they are high standards to meet because

the nature of the events and the medical conditions that I suffer paint a ghastly picture of an extensive grossly negligent medical department that holds a patent disregard to inmate health and safety. If you've read the attached declaration of mine, then you already know. (See attached **Dec. N.R.**)

21.  The critical issue and reason for this petition is that Nurse Pearsall, a nurse here at Coleman 2, purposely made an unsubstantiated allegation — it was mere suspicion — that I had diverted my medication, which was stated in my medical file and because of this unsubstantiated assertion alone, a doctor abruptly ceased, stopped, or discontinued my **pain** medication only (I say this cause they didn't even address my other medication which raises suspicion against medical), called Neurontin, for which I am utterly dependant upon for mitigating pain and daily functioning. Not only is this medication a medication that should never be abruptly stopped, I have a major need for this medication as explained and displayed in my declaration and the exhibits that accompany it. (See **Dec. N.R.**) By policy, by law both medically and constitutionally, all of these decisions made are flawed on every level.

22.  By policy, I am to recieve an incident report if indeed there was an incident, which there wasn't, and by said incident report is there an Investigation that is supposed to substantiate the assertion, which is it's purpose. It is designed to provide substance to an allegation such as the one dictated by Nurse Pearsall, and this ensures policy, law, and the constitution is observed and followed. This is the process due. This was completely disregarded. The policy is in place to ensure the law is followed, to make certain standards are met, and that arbitrary and capricious decisions aren't made unconstitutionally, whether by the medical dept or any department or employee. Medically, this is more than merely unprofessional, since abruptly stopping someone's medication is known to have debilitating effects on the individual, depending on the medication in question. By not providing someone necessary medicines that the individhal

clearly requires, dictated by thier extensive medical history, this forces them to suffer undue pain that can easily be mitigated. Plus it is not the medical dept's job to dish out punishment, it is the Disciplinary Officer's job and that is the reason why incident reports are supposed to be written up; to document such. And constitutionally this is wholly repugnant as I am being punished without due process dictated by the 5th Amendment, being refused necessary and critical medication, and having been forced to suffer the effects of medication being abruptly ceased. This encapsulates deliberate indifference, can be argued to be cruel and unusual, and utterly ignores the 8th Amendment and the due process of the 5th Amendment as well. As I've stated, it is wholly repugnant constitutionally.

(23)       The standard for issuing a preliminary injunction is the same as is required for a TRO, which is an extraordinary remedy. See **California V. American Stores Company, et. al., 492 US 1301, 110 S. Ct 1, 106 L. Ed. 2d 616 (1989); Johnson V. Dept of Agriculture, 734 F.2d 774 (11th Cir. 1984)** For me to succeed and have a preliminary injunction issue, I must demonstrate and meet the four following prongs: "① a substantial likelihood of success on the merits; ② a substantial threat of irreparable injury if the injunction were not granted; ③ that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and, ④ that granting the injunction would not disserve the public interest." **Alabama V. United States Army Corps of Eng'rs, 424 F.3d 1117, 1128 (11th Cir. 2005)** (citations omitted); **Nnadi V. Richter, 976 F.2d 682, 690 (11th Cir. 1992)** (quoting **West Point - Pepperell, Inc. V. Donovan, 689 F.2d 950, 956 (11th Cir. 1982)**)

(24)       Moreover, "a preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly establishes the burden of persuasion as to all the prerequisites." **Winter V. NRDC, Inc, 555 US 7, 19-20, 129 S. ct 365, 172 L. Ed. 2d 249 (2008); McDonald's Corp. V. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); All Care Nursing**

Service v. Bethesda Memorial Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989); Church v. City of

Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994); Stuhlbarg Int'l Sales Co., Inc v. John D.

Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir 2001) "Regardless, granting or denying a

Temporary Restraining Order or Preliminary Injunction rests in the discretion of the

district court. Carillon Importers, Ltd V. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126

(11th Cir. 1997) (citations omitted)

(25)       I filed this preliminary injuction/TRO by itself because at this moment I am still

awaiting the response from my BP-11 from the BOP's Central Office, the last and final step

before petitioning the court. I fully intend to file a tort claim if and when the BOP denies

my BP-11 but the immediate circumstances and the irreparable injury at hand made this

filing critical. Therefore the following quotes stand as truth but in my case they are pre-

mature, but I still meet each one if my tort does indeed go forward which I now con-

sider it inevitable.

(26)       "The purpose of preliminary injunctive relief is to preserve the status quo between

the parties and to prevent irreparable injury until the merits of the lawsuit itself can

be reviewed. Devose v Herrington, 42 F.3d 470, 471 (8th Cir 1994); All Care Nursing Serv,

887 F.2d @ 1537; US v. State of Alabama, 791 F.2d 1450, 1457 n.9 (11th Cir. 1986) "This ne-

cessitates that the relief sought in the motion be closely related to the conduct complained

of in the actual complaint." Devose @ 471; Penn. V. San Juan Hosp., 528 F.2d 1181, 1185 (10th

Cir. 1975) The conditions of my tort will mimic this injunction since Dr. Edinger at Lewis-

burg did similar by lying in my medical records to unsubstantiate the reality of the

problems I was having in order to limit the medical care and medicine I needed for my

symptoms/disorder. The whole thing is truly ridiculous cause if Dr. Edinger truly felt that

way in his professional opinion then why did he feel the need to lie about my small writ-



ing and my vision problems? It just makes no sense and this is precisely why I chose to supply the medical history that far back, to include him as well. Though Nurse Pearsall's actions are dissimilar to Dr. Edinger's to my immediate need of injunctive relief of the court, I still felt it prudent to include such to show the level of comfort BOP medical department employees feel in thier unlawful actions. It displays a systemic issue and the reason this has been allowed is due in part from inmates' lack of intellect and knowledge of law and thier inability to articulate coherent petitions to the court and, in part to, the courts' pattern of dismissal and refusal to provide this "great deference" we hear about and don't see in application. I mean no offense to this court as pertaining to my personal observations of the judiciary system. There is no doubt I suffer prejudice from my pre-dicament but I am honest in my objective reasoning hereon.

㉗      The law will be followed regardless and the federal courts are the highest echelons of our judiciary system and the legal profession. Though we are ignorant inmates, there can be no great deference given to us without construction and construal significantly in our favor and that is not what you find in any research in regards to prisoner litigation. The law is strictly applied upon us, as is any other party to an action. Therefore I provide my best inter-pretations of the law as I understand it herein and pray my words are heard and coherently recieved.


## b. Constitutional Amendments of Discussion
### 1. 8ᵗʰ Amendment: Deliberate Indifference and Cruel and Unusual Punishment

㉘      The only way I feel that I can prove to this court the necessity of this extraordinary measure is by displaying how the medical department's actions violate the 8ᵗʰ Amendment's deliberate indifference clause and could be argued as cruel an unusual. To reach the deliberate

indifference clause of the 8th Amendment, the action has surpassed mere negligence, so from a FTCA Tort standpoint, malpractice, negligence, and reckless disregard will have already been reached since the deliberate indifference bar is much higher. The following citations is what I've researched and what I've learned about how the 11th Circuit handles such.

㉙       The 8th Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 US 97, 102-3, 97 S.Ct 285, 50 L.Ed 2d 251 (1976) (quoting Gregg v. Georgia, 428 US 153, 173, 96 S.ct 2909, 49 L.Ed.2d 859 (1976)); See also Campbell v. Sykes, 169 F.3d 1353, 1363, (11th Cir 1999) "However, not 'every claim by a prisoner that has not recieved adequate medical treatment states a violation of the 8th Amendment." McElligot v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) "An 8th Amendment claim contains both an objective and a subjective component." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) "First, a plaintiff must set forth evidence of an objectively serious medical need." Taylor @1258; Adams @1543 I will stop here and assert that in my medical files you would find that I have extensive medical issues that are urgent; I'd have provided them herewith if the prison employees would give me my files. I have provided numerous emails displaying the many complications that medical is more then aware that I am suffering and these are only upon my recent issues. I've been on chronic care for almost a decade for my back requiring pain medication. I've been on every formulary medication offered and was on a non-formulary medication that had to be approved by Region or Central office. I have gone blind in one eye, suffer debilitating pain and am losing bladder control, all symptoms of a major medical issue and need. My medical need is crystal clear.

㉚       "Secondly, a plaintiff must prove that the prison official acted with an attitude

of 'deliberate indifference' to that serious medical need." <u>Farmer V. Brennan, 511 US 825,</u> <u>834, 114 S.Ct 1970, 128 L. Ed.2d 811 (1994); McElligot @ 1254; Campbell @ 1363</u> By the abrupt discontinuance of my medication is this established but there's so much more behind these actions and it is everything plus these other actions that were purposeful and deliberate that creates my need of injunctive relief. To have a suspicion launched against me where I lose critical medication without any say in the action violates more than the 8th or 5th Amendment of due process. However, it does encapsulate a level of wanton-ness or carelessness and patent disregard to my health or the affects I will suffer due to both, the abrupt ceasing of the medication and to go without pain medication with such major medic complications. "The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him 'the minimal civilize measure of life's necessities.' (Some citations omitted) <u>Rhodes V. Chapman, 452 US 337, 347, 1<s</u> <u>S. Ct 2392, 69 L. Ed. 2d 59 (1981)</u>; see also <u>Hudson V. Mc Millian, 503 US 1, 8-9, 112 S.Ct 995, 11<s</u> <u>L. Ed.2d 156 (1992)</u> I think I have reached these requisites. I will go ahead and finish my citations on precedence upon medical care and address it on completion so that a full pictur hereon can be observed.

I)            A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hill V. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th c</u> <u>1994)</u> (quotation and citations omitted)" The subjective component requires the plaintiff to demon- strate that the prison officials acted wantonly, with deliberate indifference to the Plaintiff's serious needs." <u>Farmer @ 834</u>; <u>Wilson V. Seiter, 501 US 294, 298-99, 111 S.Ct 2321, 115 L.Ed.2<s</u> <u>271 (1991)</u> "Deliberate indifference is the reckless disregard of a substantial risk of serious har mere negligence will not suffice." <u>Id @ 835-36</u> Consequently allegations of medical malprac-

tice or negligent diagnosis and treatment fail to state an 8th Amendment claim of cruel and unusual punishment. See Estelle @ 106 This is why I keep mentioning my future tort claim and not a Bivens action. The inadvertant or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle 105-06; Wilson @ 298.

(32)     To be clear hereon, I do assert that the current circumstances meet the rigors of the 8th Amendment and that I am in need of injunctive relief. Its just that when approaching the court concerning all the issues I've faced from the BOP's medicare system and in seeking re-munerative damages, it only makes sense to approach as a FTCA claim and not a Bivens action, especially in lieu of the Ziglar v. Abassi ruling of the Supreme Court and how it's being used as a device of estoppel across the system against prisoners. Naturally, I dis-agree with the Ziglar ruling completely since had congress wished to stop Bivens Actions, they would have — Bivens Actions have been around a half a century. The judiciary should focus on what congress has done or is doing and not on what they "might" do. That's completely counterintuitive of the Supreme Court if you compare the recent US v. Davis case where they assert this very truth in regards to 18 USC § 924(c). Moving on...

(3)     The 11th Circuit provides guidance concerning the distinction between "deliberate indif-ference" and "mere negligence", for instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to ob-tain medical treatment for the inmate." (emphasis added) Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th cir. 1997) The deliberate indifference standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompe-tent or inadequate medical care; prison personel fail to respond to a known medical problem; or prison doctors take the easier and less efficacious route in treating an inmate.

See eg., <u>Waldrop V. Evans, 871 F. 2d 1030, 1033 (11th Cir. 1989)</u> I can show all of these examples going on in my medical care and why I have been grieving the issue. This action however is due to the urgency inherent herein. The injury is clearly obvious since they know I have a serious condition and are deliberately forcing me to suffer for an unsubstantiated allegation; ergo, a suspicion.

(34)      I have clearly asserted herein, without making "bare bones" or "conclusory" statements that the medical Dept of Coleman 2, by and through the suspicions and allegations of Nurse Pearsall, and by whatever doctor that made the decision to d/c my medication, did remove my medication despite knowing that I require and have a serious need of medical care, specifically pain medication. I have provided a declaration displaying extensive exhibits to this court to obviate the fact I suffer from a serious medical condition that has yet been fully diagnosed but clearly apparent due to the symptoms and outside consultations, review, and opinion. That pain medication is the only medication I am being provided to manage the devestating affects that this condition is causing to my body. I have provided email after email of my major medical issues only to be ignored. I am not being provided adequate medical treatment that has and is contributing to a wanton, careless, and undue infliction of pain and distress. I have met the objective component required of the 8th Amendment in that I have given "evidence of an objectively serious medical need." <u>Taylor @ 1258</u>; <u>Adams @ 1543</u> I have proven "that the prison official[s] acted with an attitude of 'deliberate indifference' to that serious medical need." <u>Farmer @ 834</u>; <u>McElligot @ 1254</u>; <u>Campbell @ 1363</u> Abruptly discontinuing my medication based on suspicion, or what I call, an "unsubstantiated" claim, and thereby a false pretense, shows the deliberate indifference herein. To provide provender to wit: by the <u>Physicians Desk Reference 2010 Edition</u>, under the medication "Neurontin" you can find in the headings:

it dictates warnings of abruptly stopping such. Under "Warning/Precautions" it states: "Avoid abrupt withdrawal;" under heading "Nursing Considerations," under sub-heading "Monitoring," it states: "Monitor for withdrawal precipitated siezures;" and lastly, under sub-heading "Patient Counseling," it states: "Instruct not to abruptly d/c drug or skip doses." Physician's Desk Reference (PDR) 2010 Ed; @2009 Physician's Desk Reference, Inc.; ISBN: 978-156363-746-9; Pg. 676-677, under Medication Name: Neurontin

(35)    I cannot stress this to this court enough to what I am suffering. I only have mentioned current medical issues but I have been through a laundry list of unconstitutional actions and litigously fought and won those actions. see Railey V. Ebbert, No: 18-cv-1435 (M.D. Pa. 2018) Take a Look at my Bivens Action of Railey V. Ebbert, et. al. No: 18-cv-716 (M.D. Pa. 2018) to see unrelenting unconstitutional actions. And lastly, I must mention and put some stress on this last case because I believe it is a factor hereon, please see: Railey V. Fed. Bureau of Prisons, No: 18-cv-199 (N.D. WV. 2018) where I am acting in agency to file suit over Mr. James "Whitey" Bulger's death. That case is currently in the Appellate Court of the 4th Circuit, but it has caused a stir.

(36)    I raise this point because Mr. Bulger got shipped from Coleman 2 for having an issue with a medical personel for refusing to provide him proper treatment. From that issue was Mr. Bulger sent to an active yard and allowed to walk where they brutally murdered him in under 24 hours. He was 89 years old with questional mental facultics. His case is the perfect case to address the on-going act of sending PC-inmates to active yards and is or could be the reason I'm being refused medical. Either way, the obvious need for medical attention is clearly established and being disregarded to the point of deliberate indifference and a gross violation of my 8th Amendment right to proper medical treatment.

## 2. 5th Amendment: Due Process on Punishment/Disciplinary Actions

㊲  First and foremost, the showing of a deprivation of due process as a prisoner over a disciplinary matter has been argued ad nauseum across the federal judiciary system. I too am very familiar with the law hereon since I won the one and only suit I presented to the courts in **Bailey v. Ebbert, No. 18-CV-1435 (M.D. Pa. 2018)** Most cases over disciplinary actions of prisoners are easily dispatched since the legal precedence has been set since the 70's in **Wolff v. McDonnell, 418 US 539, 556-57 (1974).** To prove my point upon the violation of due process herein will be simple, though I percieve the defendants will attack this claim. I will address this only briefly.

㊳  "Due process is not a technical conception with a fixed content unrelated to time, place and circumstances." **Gilbert v. Homar, 520 US 924, 930, 117 S.Ct 1807, 138 L. Ed. 2d 120 (1997)** "Due process is flexible and calls for such procedural protections as the particular situation demands." **Morrissey v. Brewer, 408 US 471, 481, 92 S. Ct. 2593, 33 L. Ed 2d 484 (1972)** At minimum, due process requires notice and opportunity to be heard. **Paul v. Davis, 424 US 693, 724, 96 S.Ct 1155, 47 L.Ed 2d 405 (1976)** ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential.") "The [Due Process] clause [...] provides heightened protection against government interference with certain fundamental rights and liberty interests." **Washington v. Glucksberg, 521 US 702, 720, 117 S Ct 2302, 138 L. Ed. 2d 772 (1997)**

㊴  In addressing Due Process in a prisoner context, **Wolff** dictates, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the panoply of rights due a defendant in such proceedings does not apply." **Wolff @ 556** The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: ① advance written notice of the disciplinary charges; ② an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part

of a defense; and ③ a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. See Wolff @ 563-67

㊵    I will stop here and assert that by the lengthy attached declaration and the plentitude of evidence given herein, that it is obvious none of the 5th Amendment's Due Process clause's requisites have been met. I was not given notice of impending punishment or disciplinary action of medication removal and the reason for such. I was allowed no ability to present evidence on my behalf or had a hearing of any sort. A suspicion of a medication diversion led immediately to a severely serious punishment of medication removal, leading to a multitude of constitutional questions. I got no say and I was unceremoniously removed from critical medications. This isn't mere assertion or conclusory statements. I stand here today, as written herein, without critical medication despite any statements any defendant could produce. A drastic measure such as this must be protected by some sort of con- stitutional rights cause this is flat-out wrong, to provide some simplistic context hereon. Let me address what will be argued though...

㊶    Like any of the other constitutional rights, and without exhausting detail, the Due Process rights of prisoners may be accomodated to a prison's legitimate security needs. See Bell V. Wolfish, 441 US 520, 558-60, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Therefore "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if meaningful post-deprivation re- medy for the loss is available." Hudson V. Palmer, 468 US 517, 533, 104 S. Ct 3194, 82 L. Ed. 2d 393 (1984) (citing Parratt V. Taylor, 451 US 527, 101 S. Ct 1908, 68 L. Ed. 2d 420 (1981) Stopping here, I would like to remind the court that my medication is NOT to be abruptly stopped! (emphasis added) Furthermore, I have been on every formulary medication available and that was the particular and very reason I was prescribed such, but irregardless of that fact, I wasn't given any replacement to handle the pain that particular medication was given to subside. There was no post-deprivation remedy provided; hence this was and is punishment.

(19)

42    I assert that Nurse Pearsall provided false statements under a false context using clearly unsubstantiated assertions where no evidence at all was in play or debate. A suspicion was made by him alone and was spoken as fact and a disciplinary action was taken. "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process provided. See eg. Freeman v. Rideout, 808 F.2d 949, 952-53 (2nd cir 1986)(The filing of false charges does not constitute a claim under §1983 so long as the inmate was granted a hearing and opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th cir. 1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-58 (3rd cir. 2009) I had to use some old 3rd circuit law I had printed out but the message is the same; they did not grant a hearing nor did I have an opportunity to rebut Pearsall's claim. The 5th Amendment's Due Process clause has been grossly violated and disregarded. As I said at the beginning of this section, this constitutional right violation is easily proven and displayed. Though Nurse Pearsall was the individual that made the accusation of diverting medicine, it was the doctor, whichever that may be since I can't get my medical records, that decided to remove my meds without any consideration whatsoever to my well-being and chose, as punishment, to remove critical medication without providing me any ability to counter the unsubstantiated claim presented against me, grossly violating my 5th Amendment rights. This was/is a blatant violation for which I suffered and continue to suffer grievous injury and needs rectification immediately; hence this Preliminary Injunction.

## IV. Conclusion

43    In Conclusion, first, I must say that both my declaration and this brief is lengthy, pushing the limitations of any local court's rules and the reason, plain and simple, is that I'm scared. I'm scared to death that, like my left eye's vision, the BOP is going to allow this disease, whatever acronym it ends up being, to take away my ability to control my bladder and more. The sudden refusal, or discontinuance, of my medication without an iota of consideration of the consequences

Such would have on me displays why I have reason to be fearful. I understand that I am a prisoner and that there is certain abridgements upon my rights but the doctor didn't consider any-thing. He felt so secure in his action that there was no hesitation at any prospect of legal persual or reprimand and this is evidenced throughout the system. Medical care, or a lack thereof, is one of the major issues of a significant percentage of actions against prisons and very well should be con-sidering the fact I don't have a choice in the provider of that care, if insufficient. The courts try not to interfere with prisons' administration but this is one aspect where special considerations should be given always.

(44)        I have provided an in-depth analysis upon how the discontinuance of my medication has violated my 8th and 5th Amendment rights, in order to place into context those gross violations in the consideration for the extraordinary remedy of a TRO/Preliminary Injunction. I have thusly demonstrated that I will: ① succeed on the merits of my argument since not only does the action display deliberate indifference of the 8th Amendment, but also a complete disregard of due process under the 5th Amendment. There is no argument that can be raised to negate these violations. ② The threat of irreparable injury is very real and palpable to me personally as I make crude devises out of socks filled with toilet paper that could easily be managed with medication. It is unfathomable to be so callously reduced in punishment as I am daily unindated with pain so severe it is a challenge to even walk to the chow hall. Injury is grossly apparent. ③ To resolve these injuries is simple and the cost to the BOP is so miniscule it's almost non-existant; further displaying the repugnance hereon; and lastly ④ it is beyound doubt how it serves the public to have prisoners recieve basic healthcare.

(45)        I believe I have displayed herein that I meet the extraordinary relief that a TRO/Pre-liminary Injunction requires and beg of the court the relief of ordering a TRO and/or Preliminary In-junction to have my medication re-issued and undisturbed until the completion of the tort action that will soon follow this injuction. I assert all statements are true herein. 28 USC §1746

Respectfully Submitted,

_Aug. 12, 2019_
(Date)

/s/ _Nathan Railey_
(Signature - Nathan Railey)

Inmate # 11897-003

## Certificate of Service

I, Nathan Railey, Inmate # 11897-003, on this day, Aug. 12th, 2019, do hereby humbly attest under the penalty of perjury that all statements and opinions in the foregoing: Motion for TRO and/or Preliminary Injunctive Relief, Declaration of Nathan Railey, and In Formas Pauperis; have been provided in good faith, are true and accurate to the best of my abilities, were placed in Coleman 2's Prison mailing system to be sent via USPS, and were addressed to the follow recipient:

The United States District Court for

The Middle District of Florida

Sam M. Gibbons U.S. Courthouse

801 N. Florida Ave.; 2nd Floor

Tampa, Fl. 33602

Respectfully,

_Aug. 12th, 2019_
(Date)

/s/ _Nathan Railey_
(Signature - Nathan Railey)

Inmate # 11897-003

U.S Penitentiary Coleman 2

P.O. Box 1034

Coleman, Fl. 33521

RECEIVED

8:19 cv 2025 T 33 AEP

*Cover Letter*

2019 AUG 15  PM 2:23

**Date:** Aug 12th, 2019

**To:** The United States District Court for          **From:** Nathan Railey

The Middle District of Florida                              Inmate # 11897-003

Sam M. Gibbons U.S. Courthouse                    U.S. Penitentiary Coleman 2

801 N. Florida Ave; 2nd Floor                           P.O. Box 1034

Tampa, Fl. 33602                                                 Coleman, Fl. 33521

**ATTN:** Clerk of Court - Prisoner Litigation    *** Judge / Magistrate: Please Read !! ***

**In Re:** Railey v. Warden of Coleman 2 USP, No. Unnumbered (M.D. Fla 2019) - (Not Yet filed...but soon!)

　　　　Attached you will find my Declaration of Nathan Railey, In Forma Pauperis, Motion for TRO/Preliminary Injunctive Relief, and Motion to seal, complete with certificate of service, etc... I apologize to the court (Judge and/or Magistrate) for my filings' lengths and I didn't seperate the motions from briefs... This was a rush job due to the nature of the content. It is lengthy because I am scared. I have an undiagnosed disease and any disease that causes these symptoms is a very serious and deadly disease. This disease affects my nervous system and over time, I lose functionality of parts of my body. I've already lost one eye, suffer tremendous pain, and am losing bladder control... this is why I am scared. I beg the patience of the court hereon and into the court's hands do I place my pleas of assistance and mercy. I am a prisoner and a sinner, but I am also human and fallible. Please help me.

　　　　I ask the Clerk to please file these under seal due to the fact they contain personal medical information and I ask that they be filed as soon as humanly possible. I thank you for any time devoted to this resolve and hope our time of communion will be short-lived but justly given. Thank You.

Respectfully,

Aug. 12ᵀᴴ, 2019
(Date)

/s/ NR [signature]
(Signature - Nathan Railey)
Inmate #11897-003
U.S. Penitentiary Coleman 2
P.O. Box 1034
Coleman, Fl. 33521

Enclosed: ① Motion for TRO/ Preliminary Injunctive Relief
   ② Motion In Forma Pauperis
   ③ Motion to Seal
   ④ Declaration of Nathan Railey
   ⑤ Certificate of Service


P.S I almost forgot to mention that, Coleman 2 does not have a Warden right now and there's confusion to whom is the acting Warden. Therefore, I titled these filings with the generic "Warden of Coleman 2 U.S. Penitentiary." I hope this will not be problematic. I figured the supplied US Attorney to this action would be able to sort out that party-name issue.